**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**VELINE HICKS,**

                **Plaintiff,**　　　　　　**9:09-cv-0051**
　　　　　　　　　　　　　　　　　　**(GLS/DRH)**

        **v.**

**ROBERT WOODS, et al.,**

                **Defendants.**
_____

**APPEARANCES:**　　　　　　　**OF COUNSEL:**

**FOR THE PLAINTIFF:**
Weisberg, Zukher Law Firm　　　　ANDREW T. VELONIS, ESQ.
State Tower Building
109 S. Warren Street
Suite 410
Syracuse, New York 13202

**FOR THE DEFENDANTS:**
HON. ERIC T. SCHNEIDERMAN　　　MEGAN M. BROWN
New York State Attorney General　　Assistant Attorney General
Albany Office
The Capitol
Albany, NY 12224

**Gary L. Sharpe**
**District Court Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Veline Hicks commenced this action pursuant to 42 U.S.C. §

1983, alleging defendants[1] violated his Eighth Amendment right to be free from cruel and unusual punishment. (*See* Am. Compl., Dkt. No. 18.) Pending is defendants' motion for summary judgment. (*See* Dkt. No. 25.) For the reasons that follow, defendants' motion is granted.

## II. <u>Background</u>[2]

On January 14, 2006, Hicks, an inmate at Upstate, was assaulted by his cell mate, Darnell Cummings. (Defs.' Statement of Material Facts ("SMF") ¶ 49, Dkt. No. 25, Attach. 1.) Though Hicks "preferred having a cell mate," the same cannot be said for Cummings. (*Id.* ¶ 68.)

Prior to being double-celled with Hicks on December 6, 2005, Cummings filed multiple grievances expressing his desire to remain in a cell by himself. (*See id.* ¶¶ 21-27; Am. Compl. ¶ 12, Dkt. No. 18.) In sum, Cummings, who has a history of mental illness, threatened to harm himself and/or his cell mate if he was double-celled. (*See generally* Defs.' SMF ¶¶ 15-54.) These threats, which were not specifically directed at Hicks, were investigated and, on at least two occasions, referred to the Office of Mental Health ("OMH"). (*See id.* ¶¶ 30-31, 54.) While Cummings's cell status was

---

[1] Robert Woods, Superintendent of Upstate Correctional Facility ("Upstate"); Sgt. Gill, a corrections officer at Upstate; and Thomas Eagan, Director of the Inmate Grievance Program.

[2] The facts are undisputed unless otherwise noted.

2

not altered after his November 18, 2005 psychiatric consult—a consult

Superintendent Woods requested after speaking with Cummings on his

rounds—OMH recommended that Cummings be single celled on

December 28, 2005 pending further evaluation. (*See id.* ¶¶ 27-28, 30-31.)

The requisite evaluation was conducted on January 6, 2006, and thereafter

OMH informed Upstate's staff that there "was no psychiatric reason to

single cell Cummings" and that his threats were just attempts to manipulate

the system. (*Id.* ¶¶ 31-33, 38, 50.)

Notwithstanding OMH's findings, Cummings filed another grievance

on January 8, 2006. (*Id.* ¶ 34.)  In accordance with institutional practice,

the grievance was forwarded to Deputy Superintendent of Security and

Safety Darwin LaClair, who in turn referred it to OMH for review. (*Id.* ¶¶ 13,

34-35.)  OMH received the letter on January 10, 2006, and that same day

responded with a detailed account of Cummings's history with OMH from

October to December 2005. (*Id.* ¶¶ 35, 37.)  Based on OMH's

determination, Cummings was returned to his cell with Hicks four days

before the assault. (*Id.* ¶¶ 39, 41.)

Following the attack on January 14, 2006, Hicks filed his first

grievance for damages in February 2006. (*See* Dkt. No. 25, Attach. 7 at 6.)

After exhausting his administrative remedies, Hicks commenced the instant

action for compensatory and punitive damages.  (*See generally id.*; Am.

Compl., Prayer for Relief, Dkt. No. 18.)

### III.  Standard of Review

Summary judgment is appropriate "if the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Roe v. City of Waterbury*,

542 F.3d 31, 35 (2d Cir. 2008).  When evaluating the material facts, the

court "construes all evidence in the light most favorable to the non-moving

party, drawing all inferences and resolving all ambiguities in [its] favor."

*Amore v. Novarro*, 624 F.3d 522, 529 (2d Cir. 2010).  Thus, the movant

must demonstrate the absence of genuine issues of material fact, *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Thomas v. Roach*, 165 F.3d

137, 142 (2d Cir. 1999), a burden it can meet "if [it] can point to an absence

of evidence to support an essential element of the nonmoving party's

claim," *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18

(2d Cir. 1995).

If the movant satisfies its burden, the nonmoving party must offer

specific evidence showing that a genuine issue of material fact warrants a trial. *See Celotex*, 477 U.S. at 324. "A 'genuine' dispute over a material fact only arises if the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988) (citation omitted). Moreover, material disputes must be based on specific facts as reflected in the adverse party's response, by affidavits or as otherwise authorized by Rule 56, *see St. Pierre v. Dyer*, 208 F.3d 394, 404 (2d Cir. 2000), and affidavits must be based on personal knowledge, *see Harriscom Svenska, AB v. Harris Corp.*, 3 F.3d 576, 581 (2d Cir. 1993). The bald assertion of some alleged factual dispute will not defeat a properly supported motion. *See Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994) (citation omitted). "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998). Naturally, reasonable inferences may defeat a summary judgment motion, but only when they are supported by affirmative facts and relevant, admissible evidence. *See* Fed. R. Civ. P. 56(c)(4); *Spinelli v. City of New York*, 579 F.3d 160, 166-67 (2d Cir. 2009). "Only disputes over facts that might affect the outcome of the suit under the

5

governing law will properly preclude the entry of summary judgment."

*Anderson*, 477 U.S. at 248.

## IV.  Discussion

Defendants aver they are entitled to summary judgment because,

*inter alia*, Hicks's Eighth Amendment claim fails as a matter of law.  (*See*

Dkt. No. 25, Attach. 10 at 2-5.)  While Hicks did not contest defendants'

Statement of Material of Facts or accompanying affidavits, he does oppose

defendants' assertion regarding the sufficiency of his failure to protect

claim.  (*See generally* Dkt. Nos. 26, 27.)  Upon review of the record, the

court concurs with defendants.[3]

In the seminal case of *Farmer v. Brennan*, the Supreme Court

reaffirmed that "[a] prison official's 'deliberate indifference' to a substantial

risk of serious harm to an inmate violates the Eighth Amendment."  511

U.S. 825, 828 (1994) (internal citations omitted).  In so doing, the Court

clarified that although prison officials must "take reasonable measures to

---

[3] Defendants also assert that Hicks has not established the requisite personal involvement by any of them, and further, that they are each entitled to qualified immunity for the claims against them in their individual capacities.  (*See* Dkt. No. 25, Attach. 10 at 5-8, 10-12.)  While the court's decision rests on Hicks's failure to develop his Eighth Amendment claim, it agrees that Hicks failed to establish personal involvement by Woods and Eagan, and that Sgt. Gill, given his reliance on the recommendations of OMH, is entitled to qualified immunity. *See, e.g., Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011).  Therefore, personal involvement and qualified immunity provide alternative bases for a grant of summary judgment.

guarantee the safety of the inmates," they are not liable for "every injury suffered by one prisoner at the hands of another."  *Id.* at 832-33 (internal citations omitted).  Courts employ a two-part inquiry to identify instances in which a prison official's failure to protect an inmate reaches the constitutional threshold: (1) was the inmate "incarcerated under conditions posing a substantial risk of serious harm"; and (2) did the prison official "have a sufficiently culpable state of mind," that is*,* was he deliberately indifferent to the inmate's health or safety.  *Id.* at 834.

In analyzing the second prong, which requires a showing of deliberate indifference, the plaintiff must prove the prison official knew of and disregarded "an excessive risk to inmate health or safety"; "mere negligence" will not suffice.  *Id.* at 835, 837.  To this end, evidence of a "longstanding, pervasive, well-documented" history of inmate attacks, coupled with "circumstances suggest[ing] that the defendant-official being sued had been exposed to [this] information" would be sufficient to prove deliberate indifference.  *Farmer*, 511 U.S. at 842.

In the instant case, defendants submitted uncontested proof that OMH determined, on more than one occasion, that Cummings was mentally fit to be double-celled.  (*See* Defs.' SMF ¶¶ 27-28, 30-33, 38, 50.)

7

This evidence not only demonstrates the absence of a genuine issue of material fact with respect to Hicks's condition of incarceration, but also shifts the burden to Hicks to offer specific evidence of such an issue.  *See Celotex*, 477 U.S. at 323-24.  Remarkably, Hicks offers nothing to refute OMH's determination except a memorandum of law, in which he argues he was "incarcerated under conditions posing a substantial risk of harm."[4] (*See* Dkt. No. 27 at 4.)  This conclusory allegation is insufficient to satisfy a critical element of his claim.

Furthermore, Hicks also failed to establish that Eagan, Woods and Sgt. Gill had the requisite culpable state of mind.  With respect to Eagan, there are no facts demonstrating that he had any knowledge of Cummings's history or the assault until after it occurred.  (Defs.' SMF ¶¶ 63-64.)  Likewise, Woods—whose interaction with Cummings led him to contact OMH to investigate the matter—was reassured by OMH that Cummings's cell status did not need to be altered.  (*Id.* ¶¶ 28-30.)  Given these uncontested facts, it is clear that neither Eagan nor Woods knew of and disregarded "an excessive risk to inmate health or safety."  *Farmer*,

---

[4]  In his response, Hicks seems transfixed by the grievances Cummings filed prior to the assault.  (*See* Dkt. No. 27 at 4-8.)  However, these grievances are irrelevant as each was referred to the appropriate department, and subsequently determined to be a mere attempt to manipulate the system.

511 U.S. at 834-35.

Moreover, Hicks's claim against Sgt. Gill is similarly flawed.  Though he alleges that Sgt. Gill ignored a threat Cummings made four days before the assault, Hicks failed to prove that Sgt. Gill was aware of Cummings's mental health history, or of any incidents of violence by Cummings against another inmate or staff.  (*See* Am. Compl. ¶ 17, Dkt. No. 18.)  Indeed, Hicks has not offered any evidence showing that Cummings had any history of violence while incarcerated at Upstate, or that Sgt. Gill had the authority to disregard OMH's determination of cell status.

On the contrary, defendants submitted a sworn affidavit by Sgt. Gill stating he was unaware of Cummings's mental health history, denying that Cummings's ever made a threat against Hicks in his presence, and reiterating that he acted in accordance with OMH's determination when he returned Cummings to the cell with Hicks.  (*See* Dkt. No. 25, Attach. 8 ¶¶ 9-10, 15, 17-19.)  Thus, Sgt. Gill's conduct does not rise to requisite level to sustain Hicks's failure to protect claim.

Based on the record before it, the court concludes there is no evidence to support Hicks's Eighth Amendment claim.  While bald assertions may be enough to survive a motion to dismiss, Hicks's failure to

develop the record is fatal when considered in light of defendants' properly

substantiated motion.  As such, defendants' motion for summary judgment

is granted.

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion for summary judgment (Dkt. No.

25) is **GRANTED** and all claims against defendants are **DISMISSED**; and it

is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

November 28, 2011
Albany, New York

Gary L. Sharpe
U.S. District Judge